## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ASHRAF MANIAR** and **UMAIMA SHAIKH**,

*Plaintiffs*,

vs.

**CHAD WOLF**, IN HIS OFFICIAL CAPACITY AS ACTING SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; **DAVID PEKOSKE**, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION; **MARK MORGAN**, IN HIS OFFICIAL CAPACITY AS ACTING COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION; **WILLIAM BARR**, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES; **CHRISTOPHER WRAY**, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE FEDERAL BUREAU OF INVESTIGATION; and **CHARLES KABLE, IV**, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE TERRORIST SCREENING CENTER,

*Defendants.*

Case No.:  19-cv-03826 (EGS)

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ............................................................................................................... 1

I.      FACTUAL AND REGULATORY BACKGROUND ................................................... 1

    A.  DHS TRIP for U.S. Persons on the No Fly List ................................................. 1

    B.  Plaintiffs' Biographical Information and DHS TRIP Complaints ........................ 2

    C.  Defendants' Inadequate Adjudication of Plaintiffs' DHS TRIP Complaints .......... 3

II.     RELEVANT LEGAL STANDARDS ....................................................................... 5

    A.  Fed. R. Civ. P. 12(b)(1) ..................................................................................... 6

    B.  Fed. R. Civ. P. 12(b)(6) ..................................................................................... 6

III.    THIS COURT HAS SUBJECT MATTER JURISDICTION ....................................... 7

    A.  49 U.S.C. § 46110 Does Not Control Plaintiffs' Claims .................................... 7

    B.  The Rule Against Claim-Splitting Does Not Apply to Plaintiffs' Actions ............. 11

IV.     PLAINTIFFS' ALLEGATIONS ARE SUFFICIENTLY PLED ................................. 13

    A.  Plaintiffs Sufficiently Demonstrate Procedural Due Process Violations ................. 13

       1.  Plaintiffs Show Several Private Interests Affected by Official Action, Including

       Their Protected Right to Travel ......................................................................... 14

       2.  The Risk of Erroneous Deprivation Remains High Even in Light of Current

       Procedures ....................................................................................................... 17

       3.  Defendants' Interests Do Not Outweigh Those of the Plaintiffs ........................ 18

**B.   Plaintiffs Adequately Allege Violations of Substantive Due Process Rights**..............19

**C.   Plaintiffs Appropriately Seek Relief Under the APA** ...................................21

**D.   Plaintiffs' First Amendment Claims Survive 12(b)(6)**.................................22

**E.   Plaintiffs Sufficiently Plead Allegations Against DOJ and CBP Heads**....................24

**F.   EAJA Claims Apply to Pending Cases, and Put Parties on Notice** ...........................24

**V.     IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO AMEND**.............. 25

**CONCLUSION** ..................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ................................................................................ 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 6

*Assadzadeh v. Mueller*, 2007 U.S. Dist. LEXIS 80915 (E.D. Pa. Nov. 1, 2007) .......................... 13

*Bowen v. Mich.Academy of Family Physicians*, 476 U.S. 667 (1986) ........................................... 21

*Citizens for Equal Prot.*, *Inc. v. Bruning*, 368 F. Supp. 2d 980 (D. Neb. 2005) ............................ 15

*City of Arlington v. FCC*, 569 U.S. 290 (2013) ............................................................................ 22

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992) ................................................................ 19

*Conley v. Gibson*, 355 U.S. 41 (1957) ......................................................................................... 6

*Covad Commc'ns. Co. v. Bell Atl. Corp.*, 398 F.3d 666 (D.C. Cir. 2005) .................................... 6, 7

*Ctr. for Biological Diversity v. Jackson,* 815 F. Supp. 2d 85 (D.D.C. 2011) .................................. 6

*\*Ege v. DHS*, 784 F.3d 791 (D.C. Cir. 2015) ........................................................................ 8, 9, 10

*\*Elhady v. Kable*, 391 F. Supp. 3d 562 (E.D. Va. 2019) ................................... 14, 16, 17, 18, 19

*Elhady v. Piehota*, 303 F. Supp. 3d 453 (E.D. Va. 2017) ................................... 9, 14, 17, 18

*Empagran S.A. v. F. Hoffman-Laroche, Ltd.,* 315 F.3d 338 (D.C. Cir. 2003) ................................ 6

*Firestone v. Firestone*, 316 U.S. App. D.C. 152 (D.C. Cir. 1996) ................................................. 25

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................................... 25

*Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987) ....................................................................... 6

*Han Cao v. Upchurch*, 496 F. Supp. 2d 569 (E.D. Pa. 2007) ....................................................... 13

*Howell v. Sw. Bell. Tel., L.P.*, 2006 U.S. Dist. LEXIS 88201 (S.D. Tex. Dec. 5, 2006) ................ 12

*Ibrahim v. DHS*, 538 F.3d 1250 (9th Cir. 2008) ................................................................... 9, 10, 22

*In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004) ....................................... 11

*In re Vitamins Antitrust Litig.*, 217 F.R.D. 30 (D.D.C. 2003) ...................................... 25

*Johnson v. Paragon Sys.*, 305 F. Supp. 3d 139 (D.D.C. 2018).................................... 6

*Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019) ............................................................ 8

*Kent v. Dulles*, 357 U.S. 116 (1958).............................................................. 14, 20

*\*Kovac v. Wray*, 363 F. Supp. 3d 721 (N.D. Tex. 2019)...................................... 9, 10, 14, 18, 19, 21

*Latif v. Holder*, 686 F.3d 1122 (9th Cir. 2012)......................................................... 8, 9

*Mach Mining, LLC v. EEOC*, 575 U.S. 480 (2015)........................................................ 21

*Macon v. United States Capitol Police Bd.*, 258 F. Supp. 3d 94 (D.D.C. 2017) ............................... 6

*\*Mathews v. Eldridge,* 424 U.S. 319 (1976)............................................................ 13, 14, 17, 18, 19

*Mohamed v. Holder*, 2013 U.S. App. LEXIS 26340 (4th Cir. May 28, 2013)........................... 9, 24

*Mohamed v. Holder,* 2015 U.S. Dist. LEXIS 92997 (E.D. Va. July 16, 2015)........................ 16, 17

*Mokdad v. Lynch*, 804 F.3d 807 (6th Cir. 2015)......................................................... 7, 10

*Momenian v. Davidson*, 878 F.3d 381 (D.C. Cir. 2017)..................................................... 7

*Muhammad v. United States*, 300 F. Supp. 3d 257 (D.D.C. 2018)..................................... 7

*Nat'l Comm. to Preserve Social Sec. v. Bowen*, 735 F. Supp. 1069 (D.C. Cir. 1990)................... 11

*New York v. Heckler*, 578 F. Supp. 1109 (E.D.N.Y. 1984) .............................................. 22

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015)........................................................... 20

*Paul v. Davis*, 424 U.S. 693 (1976) ...................................................................... 16

*Photo Data, Inc. v. Sawyer*, 533 F. Supp. 348 (D.D.C. 1982)........................................ 24

*Polsby v. Thompson*, 201 F. Supp. 2d, 45 (D.D.C. 2002).............................................. 25

*Regents of the Univ. of Cal. v. DHS*, 908 F.3d 476 (9th Cir. 2018).................................. 22

*Roy Anderson Corp. v. 225 Baronne Complex, LLC*, 280 So. 3d 730 (La. App. 4th Cir 2019)...... 11

*Shaughnessy v. United States*, 345 U.S. 206 (1953) ..................................................... 18

*Sherbert v. Verner*, 374 U.S. 398 (1963) ...................................................................................... 15

*Tarhuni v. Sessions*, 2018 U.S. Dist. LEXIS 125972 (D. Or. July 27, 2018).................................. 19

*United States v. Robertson*, 2015 U.S. Dist. LEXIS 82693 (M.D. Fla. Jun. 25, 2015) .................. 23

*Wash. v. Glucksberg*, 521 U.S. 702 (1997)..................................................................................... 20

*Wilwal v. Nielsen*, 346 F. Supp. 3d 1290 D. Minn. 2018) ........................................................... 9, 21

*Zevallos v. Obama*, 10 F. Supp. 3d 111 (D.D.C. 2014) ................................................................. 12

## Statutes

5 U.S.C. § 504 ................................................................................................................................. 24

5 U.S.C. § 706(2)(A)........................................................................................................................ 21

28 U.S.C. § 1331 ............................................................................................................................... 6

28 U.S.C. § 2412(d)(1)(A)............................................................................................................... 24

49 U.S.C. § 46110.................................................................................................... 7, 8, 9, 10, 21, 22

## Rules

Fed. R. Civ. P. 8(a) ........................................................................................................................... 6

Fed. R. Civ. P. 12(b)(1)......................................................................................................... 1, 6, 7, 12

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 1, 6, 7

Fed. R. Civ. P. 15(a) ......................................................................................................................... 25

## Constitutional Provisions

U.S. Const. amend. I ............................................................................................................. 20, 22, 23

U.S. Const. amend. V............................................................................................................ 13, 14, 19, 21

## INTRODUCTION

Ashraf Maniar and Umaima Shaikh (collectively, the "Plaintiffs") are a married couple and are both on the No Fly List. They bring this suit against official capacity Defendants Chad Wolf (Department of Homeland Security, or "DHS"); David Pekoske (Transportation Security Administration, or "TSA"); Mark Morgan (U.S. Customs and Border Protection, or "CBP"); William Barr (Department of Justice or "DOJ"); Christopher Wray (Federal Bureau of Investigation, or "FBI"); and Charles Kable, IV (Terrorist Screening Center, or "TSC"), in order to challenge the constitutionality and adequacy of Defendants' policies and actions. *See generally* Complaint for Injunctive and Declaratory Relief, Doc. 1 (hereafter "Doc. 1"). On March 9, 2020, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See generally* Defendants' Memorandum of Points and Authorities in Support of Their Motion to Dismiss, Doc. 9 (hereafter "Doc. 9"). For the reasons set forth below, Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied in its entirety.

## I.     FACTUAL AND REGULATORY BACKGROUND

### A.     DHS TRIP for U.S. Persons on the No Fly List

The TSC is a multi-center agency administered by the FBI that is responsible for the management and operation of the Terrorist Screening Database ("TSDB"). Doc. 1 at ¶ 8. The TSDB compiles the nation's watchlists, including the No Fly List. *Id.* This list contains individuals who are prohibited from flying to, from, or over U.S. territory. *Id.* at ¶ 82. In order to be nominated to the TSDB, there need only be reasonable suspicion that an individual is a "known or suspected terrorist." *Id.* at ¶ 83. Even though various federal agencies may suggest persons for inclusion within the TSDB, the TSC makes the final decision on whether a nominated individual meets the minimum criteria for inclusion. *Id.* at ¶ 84.

The DHS Traveler Redress Inquiry Program ("TRIP") redress process represents the only administrative avenue of redress by which aggrieved travelers may challenge placements on the No Fly List. *Id.* at ¶¶ 34, 67, 116. Under previous DHS TRIP procedures, DHS did not confirm or deny a person's status on the No Fly List. *Id.* at ¶ 88. In response to ongoing litigation, DHS TRIP revised its regulations in or around 2014. *Id.* at ¶ 90. For U.S. persons who apply to DHS TRIP that want to challenge their apparent No Fly List designations, DHS TRIP sends a letter to the redress applicants, notifying the individuals of their status (if on the No Fly List), and providing the individual the option to receive and/or to submit additional information. *Id.* at ¶ 92. If the traveler elects to receive additional information, including why they are on the No Fly List, DHS TRIP commits to then provide a second, or "stage-two" letter, including the specific criteria under which the individual has been placed on the No Fly List. *Id.* at ¶ 93. This includes an unclassified summary of the information that supports the individual's placement on the No Fly List "to the extent feasible" in light of national-security and law-enforcement interests. *Id.* The amount of information provided varies on a case-by-case basis. *Id.* at ¶ 94. After receiving this stage-two letter, DHS TRIP applicants may submit written responses to challenge their continued No Fly List placement. *Id.* at ¶ 95. At the conclusion of the process, the TSA provides the traveler with a final written determination, and notifies the individual of his or her ability to seek further judicial review. *Id.* at ¶ 97.

**B.    Plaintiffs' Biographical Information and DHS TRIP Complaints**

Plaintiffs are both practicing Muslims. *Id.* at ¶¶ 1-2, 145. They do not have any history of mental health issues, and neither has been convicted of (or charged with) criminal activity. *Id.* at ¶¶ 13, 48-49, 54-55, 75-76. Both have experienced severe difficulties traveling, including the inability to print or obtain boarding passes and prohibition from boarding planes. *Id.* at ¶¶ 19, 56. Plaintiffs

have experienced severe difficulties traveling internationally via ground transportation as well, including but not limited to being prohibited from traveling by car into Canada. *Id.* at ¶ 46, 57. Both Plaintiffs hope to travel to Saudi Arabia to complete Hajj and religious pilgrimage requirements in the future, but are currently prohibited from doing so due to their placements on the No Fly List. *Id.* at ¶¶ 16-17, 20, 52, 80-81, 145. Due to their inability to fly, Plaintiff Shaikh has missed important family events: overseas weddings, funerals, and graduations; Plaintiff Maniar has suffered difficulties in performing chosen work in the form of international business ventures in Malaysia. *Id.* at ¶¶ 15, 18, 45, 47, 61, 63, 74, 79. Plaintiffs have both separately learned that FBI agents have asked people they know personally questions about them, which implies that Plaintiffs have criminal and/or nefarious intentions or contacts. *Id.* at ¶¶ 48-49, 75-76.

May 2017 is the first time Plaintiff Maniar recalls being prohibited from flying. *Id.* at ¶ 22. He filed his initial DHS TRIP inquiry around that time. *Id.* at ¶¶ 23-24. After Plaintiff Maniar's experiencing traveling worsened,[1] and he believed himself to be on the No Fly List, he filed a second DHS TRIP complaint on February 20, 2018. *Id.* at ¶¶ 32-33.  Plaintiff Shaikh first recalls being prohibited from flying on or around July 3, 2018. *Id.* at ¶¶ 59-63. Shortly after, she filed a DHS TRIP application on August 13, 2018. *Id.* at ¶¶ 65-66.

## C.   Defendants' Inadequate Adjudication of Plaintiffs' Active DHS TRIP Complaints

After several months without even a confirmation that he is on the No Fly List, Plaintiff Maniar filed a Petition for Writ of Mandamus,[2] requesting that the court compel DHS to provide

---

[1] Plaintiff Maniar recalls being permitted to fly in November 2017 after he initiated his first DHS TRIP inquiry. Doc. 1 at ¶ 25. Unfortunately, on December 14, 2017, FBI agents raided Plaintiff Maniar's house and took his passport and electronics. *Id.* at ¶¶ 27-28. A couple days later, Plaintiff was prohibited from flying, and was escorted out of the airport. *Id.* at ¶¶ 29-31.

[2] This matter remains currently pending and was filed as *Maniar v. McAleenan*, No. 1:18-cv-01362-RDM (D.D.C.).

an initial determination as to Plaintiff's status on the No Fly List, comply with its own stated regulations, and respond in a timely manner moving forward with Plaintiff's TRIP inquiry. *Id.* at ¶ 35.  DHS sent Plaintiff Maniar a letter on June 27, 2018, confirming that he is on the No Fly List. *Id.* at ¶ 36; *see also* Doc. 9-3, Ex. C to Defendants' Motion to Dismiss, at 2. This confirmation, which took over four months, failed to provide Plaintiff Maniar with a single piece of information upon which he could base a challenge to that placement. Doc. 1 at ¶¶ 37-38. On October 30, 2018, in response to Plaintiff Maniar's request for the reasons supporting his No Fly List designation, DHS produced a stage-two letter, containing only one sentence addressing the reasons for his continued No Fly List placement. *Id.* at ¶ 40; *see also* Doc. 9-5, Ex. E to Defendants' Motion to Dismiss, at 2. This sentence stated, without any context provided or names of individuals involved, timeframe, or city, that Plaintiff is "on the U.S. Government's No Fly List due to in, part, [his] association and extensive communication with a known extremist located in the United Kingdom who has supported terrorist organizations." Doc. 1 at ¶ 40. Based solely on this single sentence, which comprises the entirety of the "unclassified summary" provided to Plaintiff Maniar to date, he remains unable to put forth a meaningful challenge to the decision made by DHS. *Id.* at ¶¶ 41-42. On December 13, 2018, Plaintiff Maniar filed a timely administrative appeal. He continues to await a response to that appeal, over a year later. *Id.* at ¶ 44.

Plaintiff Shaikh also had to wait over four months before the U.S. government even confirmed her No Fly List designation. *Id.* at ¶ 69. On December 26, 2018, Plaintiff Shaikh requested any and all relevant information supporting this placement, including but not limited to an unclassified summary. *Id.* at ¶ 72. On May 14, 2019, several months after requesting additional information supporting her placement on the No Fly List, Plaintiff Shaikh filed a Petition for Writ of Mandamus, requesting that the court compel DHS to provide the reasons supporting Plaintiff's

status on the No Fly List, comply with its own stated regulations, and respond in a timely manner moving forward.[3] *Id.* at ¶ 73. As Defendants note, only after the initiation of this action did DHS TRIP issue a stage-two letter to Plaintiff Shaikh, on February 3, 2020. Doc. 9 at 10; *see also* Doc. 9-8, Ex. H to Defendants' Motion to Dismiss, at 2. This letter wasn't issued until over a year after Plaintiff Shaikh's request for supporting reasons. *See* Doc. 1 at ¶ 72. Similar to the stage-two letter issued to Plaintiff Maniar, this stage-two letter provided only one partially meaningful sentence pertaining to the reasons Plaintiff Shaikh is on the No Fly List:

> You are on the U.S. Government's No Fly List due to, in part, your provision of support to an individual, made with the knowing purpose of furthering the individual's desire to join a foreign-based terrorist organization, as well as your association and communication with multiple known extremists.

Doc. 9 at 10; *see also* Doc. 9-8 at 2. The letter, similar to the one issued to Plaintiff Maniar, also states that "[a]dditional reasons for and details supporting your placement on the U.S. Government's No Fly List cannot be provided to you due to law enforcement and security concerns." *Id.*; *see also* Doc. 9.5 at 3 (for a similar disclaimer in the stage-two letter issued to Plaintiff Maniar stating that "[t]he additional details regarding your placement on the U.S. Government's No Fly List cannot be provided to you due to national security concerns"). On March 9, 2020, Plaintiff Shaikh filed an administrative appeal, to which she awaits a response.

## II.   RELEVANT LEGAL STANDARDS

As Defendants attempt to dismiss Plaintiffs' claims under different legal standards, Plaintiffs address each standard in turn below.

---

[3] This matter, filed as *Shaikh v. McAleenan*, No. 1:18-cv-01398-RBW (D.D.C.), was dismissed on March 31, 2020, based on the procedural production of the cursory stage-two letter.

**A.      Fed. R. Civ. P. 12(b)(1)**

When faced with multiple Rule 12 challenges, reviewing courts "should first consider the Rule 12(b)(1) motion because '[o]nce a court determines that it lacks subject matter jurisdiction, it can proceed no further.'" *Johnson v. Paragon Sys.*, 305 F. Supp. 3d 139, 144 (D.D.C. 2018) (Sullivan, J.) (quoting *Ctr. for Biological Diversity v. Jackson,* 815 F. Supp. 2d 85, 90 (D.D.C. 2011) (Sullivan, J.)). In deciding a motion to dismiss brought under Rule 12(b)(1), courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (internal citations omitted). Courts may only dismiss a complaint for lack of subject matter jurisdiction if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.,* 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Federal district courts possess subject matter jurisdiction over all civil actions "arising under the Constitution […] of the United States." 28 U.S.C. § 1331.

**B.      Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) motions test the legal sufficiency of a complaint. *Macon v. United States Capitol Police Bd.*, 258 F. Supp. 3d 94, 103 (D.D.C. 2017) (Sullivan, J.) (internal citations omitted). To survive a Rule 12(b)(6) challenge, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). A plaintiff is "not required to plead facts sufficient to prove its allegations; rather, the complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Covad Commc'ns. Co. v. Bell Atl. Corp.*, 398 F.3d 666, 671 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 8(a)). The "issue presented by a motion to

dismiss is not whether a plaintiff will ultimately prevail but whether a claimant is entitled to offer evidence to support the claims." *Covad*, 398 F.3d at 671 (internal citations omitted). Similar to review of a Rule 12(b)(1) challenge, courts assessing a motion to dismiss brought under Rule 12(b)(6) "must treat the plaintiff's allegations as true[,] and draw all reasonable inferences in the plaintiff's favor." *Muhammad v. United States*, 300 F. Supp. 3d 257, 262 (D.D.C. 2018) (citing *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017)).

As set forth in further detail below, Plaintiffs have pled sufficient facts for this Court to find that this Court has subject matter jurisdiction, and that Plaintiffs have stated plausible claims for which relief can be granted. Plaintiffs therefore respectfully request that this Court deny Defendants' Motion to Dismiss in its entirety.

### III.   THIS COURT HAS SUBJECT MATTER JURISDICTION

**A.   49 U.S.C. § 46110 Does Not Control Plaintiffs' Claims**

Defendants ask this Court to dismiss Plaintiffs' Complaint due to the alleged applicability of 49 U.S.C. § 46110 (also referred to as "Section 46110"). Doc. 9 at 1, 12-15.  Defendants assert that any challenges to the adequacy of DHS TRIP must be brought in a court of appeals pursuant to Section 46110, because DHS TRIP procedures constitute a final order issued "in whole or in part by TSA." *Id.* at 12.  In support of their proposition that Plaintiffs' claims can only be heard in an appeals court, Defendants cite to *Mokdad v. Lynch*, 804 F.3d 807 (6th Cir. 2015), a case not binding on this Court, for the assertion that challenges to the adequacy of the redress process challenge a TSA "order."  Doc. 9 at 12-13 (citing *Mokdad*, 804 F.3d at 811). However, the *Mokdad* opinion fails to reach whether Section 46110 strips district courts of subject matter jurisdiction, because of the failure to join the TSA as a party in that suit. *Id.* at 808; *see also id.* at 815 (rejecting the inescapable intertwinement doctrine's applicability because ruling otherwise would "not only

be inconsistent with existing law but also would run the risk of inadvertently expanding the number and range of agency orders that might fall under the exclusive-jurisdiction provisions that Congress did not intend to sweep so broadly").

This argument contradicts the holdings of the D.C. Circuit and several other federal courts, and also mischaracterizes the nature of Plaintiffs' claims. In *Ege v. DHS*, the D.C. Circuit reasoned that "[b]ecause 'TSC—not TSA—actually reviews the classified intelligence information about the travelers and decides whether to remove them from the List' and 'established the policies governing that stage of the redress process,' we agree that [the court of appeals] cannot, on [S]ection 46110 review, provide relief to an individual included on the No Fly List or in the TSDB by 'simply amending, modifying, or setting aside TSA's orders by directing TSA to conduct further proceedings." 784 F.3d 791, 795-96 (D.C. Cir. 2015) (internal citations omitted).   Other courts have ruled similarly in adjudicating cases with similar facts. *See, e.g., Latif v. Holder*, 686 F.3d 1122, 1128-29 (9th Cir. 2012) ("district courts shall have original jurisdiction over travelers' substantial challenges to inclusion on [TSDB or consolidated watch] List" and also finding that district courts possess "original jurisdiction over […] claim[s] that the Government failed to afford them an adequate opportunity to contest their apparent inclusion on the [No Fly] List"). Defendants assert that *Ege*'s holding does not control because it pertains to pre-2015 redress procedures for individuals on the No Fly List. Doc. 9 at 14-15 (arguing that "because it 'is no longer the case' under the revised procedures that 'any remedy must involve TSC,'" the "'plain language' of Section 46110'" grants the court of appeals exclusive jurisdiction) (citing *Kashem v. Barr*, 941 F.3d 358, 391 (9th Cir. 2019)).

While the TSA Administrator now possesses the ability to issue an order removing an individual from, or maintaining an individual on, the No Fly List, the TSC is still the sole agency

responsible for including someone on the No Fly List in the first place. *See* Doc. 9-1, Ex. A to Defendants' Motion to Dismiss, "Overview of the U.S. Government's Watchlisting Process and Procedures" at 3-5. The TSC also continues to maintains the TSDB. *Id.* at 3. Furthermore, as Defendants concede, the TSC enjoys the ability to remove someone on the No Fly List (or even modify records to place No Fly List persons on the Selectee list or other subsets). *Id.* at 9. Therefore, any remedy in this case involves the TSC, which continues to not be named under Section 46110. *See Ibrahim v. DHS*, 538 F.3d 1250, 1256 (9th Cir. 2008) ("[t]he No-Fly List is maintained by the Terrorist Screening Center, and [S]ection 46110 doesn't apply to that agency's actions"). In addition, several courts have found that Section 46110 does not deprive district courts of jurisdiction for adequacy challenges to DHS TRIP even *after* the issuance of the revised DHS TRIP procedures, consistent with the holdings in *Ege* and *Latif*. *See Wilwal v. Nielsen*, 346 F. Supp. 3d 1290, 1303-04 (D. Minn. 2018) (finding "Section 46110 does not deprive [the court]" of subject matter jurisdiction ); *Kovac v. Wray*, 363 F. Supp. 3d 721, 743 (N.D. Tex. 2019) ("[S]ection 46110 does not bar its consideration of Plaintiffs' challenge to the adequacy of the redress process under the circumstances of this case, in which Plaintiffs are also raising broad constitutional challenges to their continued inclusion in the TSDB"); *Elhady v. Piehota*, 303 F. Supp. 3d 453, 461-62 (E.D. Va. 2017) (quoting *Mohamed v. Holder*, No. 11-1924, 2013 U.S. App. LEXIS 26340, *5-6 (4th Cir. May 28, 2013)) (claims that "'challenge the inter-agency actions of the TSC and the TSA' necessarily 'requires scrutiny of both the TSC and the TSA's actions'" as well as finding that while Section 46110 "'necessarily gives [the courts of appeals] broad powers of review of the TSA' there is not 'similar independent authority over the TSC'").

In fact, the *Kovac* court specifically addressed the revised procedures and "declined to take judicial notice" of them "at the motion-to-dismiss stage." *Kovac*, 363 F. Supp. 3d at 734 n.4

("[f]rom what the court can discern, the 'revised redress procedures' are not codified, have not been subject to a rule-making process, and are not published in the Federal Register or the Code of Federal Regulations. Nothing, therefore, precludes [d]efendants from changing the process at any time with no notice to the public or those placed on the watchlist").[4] The *Kovac* court also noted that in considering the application of Section 46110, "the court must focus on the nature of [p]laintiffs' allegations." *Id.* at 741. Similar to the plaintiffs in *Kovac*, Plaintiffs here "raise broad constitutional challenges to their continued inclusion in the TSDB." *Id.* at 743. Therefore, to the extent this Court does not find this Circuit's *Ege* decision controlling, the *Kovac* opinion provides more applicable guidance than the *Mokdad* case on which the government erroneously relies.

Defendants' argument that *Ege* doesn't control is self-defeating. For instance, Defendants recognize that the *Mokdad* court "recognized that a challenge to the DHS TRIP redress procedures would be a separate challenge to a TSA order subject to review under Section 46110" while also acknowledging that "subsequent revisions to the redress process" occurred since the Sixth Circuit's issuance of the decision. In doing so, they also ask this Court to look the other way on *Mokdad*'s limitations and depart from *Ege*, despite the inability to point to a more recent controlling case pertaining to this Court. Defendants can't have it both ways. Therefore, consistent with prior precedent in this Circuit and the recent holdings of multiple jurisdictions <u>after</u> the issuance of revised TRIP procedures, this Court has subject matter jurisdiction over these claims.

---

[4] This language tracks that of the *Ibrahim* court, which similarly acknowledged that its "interpretation of [S]ection 46110 is consistent not merely with the statutory language but with common sense as well. Just how would an appellate court review the agency's decision to put a particular name on the list? There was no hearing before an administrative law judge; **there was no notice-and-comment procedure**. For all we know, there is no administrative record of any sort for us to review. […] So if any court is going to review the government's decision to put Ibrahim's name on the No-Fly List, it makes sense that it be a court with the ability to take evidence." *Ibrahim*, 538 F.3d at 1256 (emphasis added).

**B.      The Rule Against Claim-Splitting Does Not Apply to Plaintiffs' Mandamus Actions**

Defendants also assert that Plaintiffs' Complaint should be dismissed pursuant to the rule against claim-splitting. Doc. 9 at 15. While Defendants are correct that "the rule against claim splitting 'requires that all claims arising out of a single wrong be presented in one action,'" this rule does not apply to Plaintiff Maniar's mandamus action, due to the nature of that lawsuit.[5]

In mandamus actions, courts "will interfere with the normal progression of agency proceedings to correct transparent violations of a clear duty to act." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004); *see also Nat'l Comm. to Preserve Social Sec. v. Bowen*, 735 F. Supp. 1069, 1080 (D.C. Cir. 1990) (mandamus actions "can be used to compel" an agency's compliance with constitutional requirements). After waiting over several months for DHS to act, Plaintiffs initiated separate petitions for writs of mandamus, seeking to compel DHS to take the next step in their respective DHS TRIP administrative proceedings. *See generally* Doc. 9-6, Plaintiff Maniar's Amended Petition for Writ of Mandamus, Ex. F to Defendants' Motion to Dismiss; *see also* Doc. 9-7, Plaintiff Shaikh's Petition for Writ of Mandamus, Ex. G to Defendants' Motion to Dismiss. Due to the relief sought in those mandamus actions and the limited factual scope involved, the rule against claim splitting does not apply to either of the Plaintiffs.

Courts have held that "the general rule of claim splitting does not app**ly** where 'it is the sense of the [statutory] scheme that the plaintiff should be permitted to split [its] claim.'" *Roy Anderson Corp. v. 225 Baronne Complex, LLC*, 280 So. 3d 730, 738 (La. App. 4th Cir 2019); *see also id.* at 733 (a prior mandamus proceeding did not have res judicata or claim splitting effect "because the statutory scheme contemplated a subsequent suit on the merits"). In the Order

---

[5] As noted earlier in this Response, Plaintiff Shaikh's prior mandamus action is no longer active based on the procedural, but not substantive, issuance of the stage-two letter to her.

dismissing Plaintiff Shaikh's mandamus case[6] (Dkt. 16, filed herewith as Plaintiffs' Exhibit A),

the Court noted

> [P]laintiff [Shaikh], in her Complaint, does not challenge the sufficiency or constitutionality of the explanation provided by the Traveler Redress Inquiry Program in the February 3, 2020 letter, but rather only requests that the Court "compel [the] defendant to provide reasons supporting [the] plaintiff's placement on the No Fly List," Compl. at 7 (capitalization removed), and declare "that [the] [d]efendant must supply [the] [p]laintiff [with] the reasons supporting her No Fly List designation," id. ¶ 45, relief which the plaintiff has already received from the Traveler Redress Inquiry Program in the February 3, 2020 letter. Therefore, the Court concludes that the plaintiff's claims are now moot and that it must grant the defendant's second motion to dismiss on that basis, see Zevallos v. Obama, 10 F. Supp. 3d 111, 123 (D.D.C. 2014) ("All this Court can do is 'compel agency action […] unreasonably delayed,' i.e., compel [the agency] to issue a decision—which it has already done. The [c]ourt must therefore dismiss [the] [plaintiff's] claim on this issue under [Rule] 12(b)(1).

*Id.* at 6. Accordingly, it is apparent that the Court construed Plaintiff Shaikh's claims to be solely focused on compelling DHS to provide a stage-two response letter, so that her DHS TRIP appeal could advance. The former action also made it apparent that Plaintiff Shaikh intended to challenge her No Fly List placement in a future, substantive lawsuit. *See*, *e.g.*, Doc. 9-7 at ¶ 24 ("[t]his lack of action by DHS leaves Plaintiff with no constitutionally adequate way to challenge her No Fly List placement"). Therefore, the rule against claim-splitting does not apply to Plaintiff Shaikh.

While Plaintiff Maniar's mandamus petition remains pending in this District, the rule against claim-splitting does not bar his claims either, as he asks the Court in his mandamus action to "order Defendant [DHS] to provide him with a substantive, meaningful summary of the information which led to his placement on the No Fly List, such that affords him the opportunity to provide a full and meaningful response." Doc. 9-6 at ¶ 26. Due to this contemplation of a future

---

[6] Plaintiffs note that, due to the Order dismissing Plaintiff Shaikh's mandamus action, the rule against claim-splitting can't apply. *See*, *e.g.*, *Howell v. Sw. Bell. Tel., L.P.*, No. B-06-75, 2006 U.S. Dist. LEXIS 88201, *27 (S.D. Tex. Dec. 5, 2006) ("issue of claim-splitting may be barred upon issuance of a final judgment").

substantive lawsuit, the rule against claim-splitting also does not apply to Plaintiff Maniar. Furthermore, Defendants' arguments that Maniar's Administrative Procedure Act ("APA") claim is identical to that in his mandamus action (*see* Doc. 9 at 16-17) squarely fail, as Plaintiff Maniar's APA claim in his mandamus action also seeks an order compelling DHS to substantively comply with the next step in a process, rather than challenging the No Fly List redress process as a whole, as he does in this action. *See Assadzadeh v. Mueller*, No. 07-cv-2676, 2007 U.S. Dist. LEXIS 80915, *12 (E.D. Pa. Nov. 1, 2007) (internal citations omitted); *see also Han Cao v. Upchurch*, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007) ("[m]ost of the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are coextensive"). Plaintiff Shaikh's recently dismissed mandamus action sought the same type of relief. Therefore, the rule against claim-splitting does not apply to Plaintiffs' mandamus actions, and Defendants' Motion fails as a matter of law.

## IV.    PLAINTIFFS' ALLEGATIONS ARE SUFFICIENTLY PLED FOR THIS STAGE

### A.    Plaintiffs Sufficiently Demonstrate Procedural Due Process Violations

Under the Fifth Amendment, "[no] person shall be [...] deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In order to violate this provision, government action must "deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976) (internal citations omitted). Reviewing courts weigh three factors in order to determine what procedural due process is due: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the

function involved and the fiscal and administrative burdens that the additional [...] procedural requirements would entail." *Id.* at 335.

1. Plaintiffs Show Several Private Interests Affected by Official Action, Including but Not Limited to Their Protected Right to Travel

The first *Mathews f*actor weighs in favor of Plaintiffs due to the protected liberty interests they allege. Plaintiffs identify their liberty interest in the right to travel, which is commonly also referred to as the right of movement. Doc. 1 at ¶¶ 112, 114, 127. The general right of free movement is a long recognized, fundamental liberty. *Kent v. Dulles*, 357 U.S. 116, 125 (1958) ("The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment"). The Supreme Court recognizes a protected liberty interest in traveling internationally. *Id.* at 126 ("[t]ravel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic to our scheme of values"). Courts find that the limitations of the right to movement imposed on persons on the No Fly List constitute deprivations of liberty interests. *See Kovac*, 363 F. Supp. 3d at 758, n. 11 ("[w]hile the Government has a significant and compelling interest, an American citizen placed on the No Fly List or Screening List has countervailing liberty interests and is entitled to a meaningful opportunity to challenge that placement"); *see also Elhady v. Kable*, 391 F. Supp. 3d 562, 578-79 (E.D. Va. 2019) ("[i]nclusion in the TSDB accordingly imposes a substantial burden on [p]laintiffs' exercise of their rights to international travel and domestic air travel, thus constituting a deprivation of Plaintiffs' liberty interests that requires some measure of due process"); *id.* at 579 ("liberty interests implicated by [...] inclusion in the TSDB, **though weaker than those implicated on the No Fly List, are nevertheless strong**") (emphasis added); *Piehota*, 303 F. Supp. 3d at 464 ("[p]laintiffs have plausibly alleged [...] that their inclusion in the Watchlist […]

caused them to suffer a deprivation of a liberty interest as that term is historically understood"). Here, Plaintiffs experienced significant burdens in travel, by alleging they are prohibited from flying altogether, and have been prohibited from doing so internationally by other methods. Doc. 1 at ¶¶ 29-31, 37, 45-46, 56-58.  They therefore have sufficiently alleged private action that will be affected by the official action in the form of their protected liberty interest in the right to travel.

Courts also recognize that freedom of religion, including the right to practice sincerely held religious beliefs, is among the deprivations of liberty the Due Process Clause was designed to prevent. *See Sherbert v. Verner*, 374 U.S. 398, 413 (1963) (Stewart, J., concurring) ("I am convinced that no liberty is more essential to the continued vitality of free society which our Constitution guarantees than is the religious liberty protected by the Free Exercise Clause explicit in the First Amendment and imbedded in the Fourteenth"). Plaintiffs sufficiently allege that Defendants' actions and policies burden their religious practice. Doc. 1 at ¶ 52 ("this designation on the No Fly List prevents Plaintiff Maniar from practicing his sincerely held religious beliefs, including traveling to Saudi Arabia for Hajj and pilgrimage"); *id.* at ¶ 80 (same regarding Plaintiff Shaikh). Plaintiffs therefore sufficiently allege an additional protected interest of their rights to exercise their religion under the First Amendment.

Although not necessary, Plaintiffs present an additional private action impacted by the Defendants' policies and actions: their liberty interest in nonattainder, which is the interest against being singled out for punishment without trial. *See Citizens for Equal Prot.*, *Inc. v. Bruning*, 368 F. Supp. 2d 980, 1006 (D. Neb. 2005) (internal citations omitted) ("[w]ithout the nonattainder principle, the legislature would simply single out its enemies -- or the politically unpopular -- and condemn them for who they are"). Plaintiffs have suffered numerous punishments, including the inability to fly, the inability to travel internationally, being subject to unfounded and false

government stigmatization, substantial burdens on their religious exercise, and more. Doc. 1 at ¶¶ 120-121. Therefore, while not required, Plaintiffs allege another protected liberty interest in nonattainder.

Multiple courts have also found that individuals placed in the TSDB have viable due process claims, based on a stigma-plus theory. An individual has certain rights with respect to governmental defamation which alters or extinguishes a right or status previously recognized by state law. *Paul v. Davis*, 424 U.S. 693, 711 (1976). The *Elhady v. Kable* court found that the plaintiffs' reputational interests implicated by their placement in the TSDB was "substantial." 391 F. Supp. 3d at 580. The court looked to the broad extent to which information was disseminated, "including purposes far removed from border security or the screening of air travelers." *Id.* ("For example, TSDB information is used in the screening of government employees and contractors, for which purpose access to the TSDB is provided to certain large private contractors to screen certain employees, as well as private sector employees with transportation and infrastructure functions"). The Eastern District of Virginia acknowledged "the broad range of consequences that might be visited upon such a person if that stigmatizing designation were known by the general public." *Mohamed v. Holder,* No. 1:11-cv-50, 2015 U.S. Dist. LEXIS 92997, *22 (E.D. Va. July 16, 2015). That district court also contemplated scenarios where an individual placed on the No Fly List would become known to others outside of the government. *Id.* ("[f]or example, any member of the general public who would actually witness a person being excluded from boarding might draw an adverse inference concerning that person's reputation"). Similarly, Plaintiffs here allege that their placement on the No Fly List, and the dissemination of that information by federal agencies, results in the Plaintiffs' association with the stigmatizing labels of 'suspected terrorists,'" without providing Plaintiffs with a constitutionally adequate mechanism to challenge those labels.

Doc. 1 at ¶ 113. The reputational harm contemplated by the courts in *Kable* and *Mohamed* is precisely the harm Plaintiffs face, given their ongoing No Fly List placement. *See, e.g., Kable*, 391 F. Supp. 3d at 580 (internal citations omitted) ("while […] protected reputational interests impacted by his No Fly List status were 'not as strong as his travel related interests'" they "'underscore[d] the need for strong procedural protections for […] travel related rights'"). Furthermore, Plaintiffs allege additional reputational damage in the form of Defendants' agents asking persons in Plaintiffs' networks questions about them, and implying they have criminal associations or intent. Doc. 1 at ¶¶ 48-50, 75-77. Last, Plaintiff Maniar alleges harm on his chosen employment, coupled with reputational damage. *Id.* at ¶¶ 15, 19, 47; *see also Piehota*, 303 F. Supp. 3d at 464 (finding the plaintiffs alleged a cognizable liberty interest based on consequences they suffered traveling). Accordingly, Plaintiffs sufficiently allege that Defendants violated their protected liberty interests in their right to travel, their reputations, nonattainder, the right to chosen employment, and the right to exercise their religious beliefs. These violations together constitute a violation of the stigma-plus doctrine, which further meets this first *Mathews* factor.

## 2. The Risk of Erroneous Deprivation Remains High Even in Light of Current Procedures

The second *Mathews* factor also weighs in Plaintiffs' favor, since the risk of erroneous deprivation remains very high for both of them. *See* Doc. 1 at ¶¶ 53-58 (discussing low standards for nomination into the TSDB). As noted in *Mathews*, "[t]he fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Due process protections require the right "to know a charge, to be confronted with the accuser, to cross examine informers, and to produce evidence in one's behalf" which "is especially necessary where the occasion [...] is fear of future misconduct, rather than crimes committed." *Shaughnessy v. United States*, 345 U.S.

206, 224-27 (1953) (Jackson, J., dissenting). It follows that "Plaintiffs are entitled to know the charges made against them so that they may rebut them and correct errors." Doc. 1 at ¶ 117. The sentences provided to both Plaintiffs lack sufficient identifying criteria by providing no context, names involved, timeframe, or city. *See id.* at ¶ 118 (regarding the sentence summary issued to Plaintiff Maniar). Furthermore, redress applicants do not receive proper review of any constitutional complaints contained in their TRIP inquiries. *See Kovac*, 363 F. Supp. 3d at 746 ("the DHS TRIP process would not provide [plaintiff] with an opportunity to present for consideration [of] constitutional claims. The DHS TRIP process addresses only whether a traveler who has submitted an inquiry is, in fact, the individual listed in the TSDB, and if so, whether there is sufficient information to support the listing"). As noted by the *Piehota* court, "[t]he Government's 'trust us' approach is inconsistent with the fundamental procedural protections applicable to the deprivation of a protected liberty interest, including the right to be heard." 303 F. Supp. 3d at 465; *see also Kable*, 391 F. Supp. 3d at 581-82 ("it is undisputed that there is no independent review of a person's placement on the TSDB by a neutral decision maker, and when coupled with the limited disclosures and opportunity to respond by a person who requests that his status be reviewed, there exists a substantial risk of erroneous deprivation, regardless of the internal procedures used to determine whether a nomination to the TSDB is accepted"); *see also id.* at 582 ("the currently existing procedural safeguards are not sufficient to address that risk"). Due to the high risk of erroneous deprivation and the failure of DHS TRIP to consider constitutional claims, Plaintiffs' claims prevail under the second *Mathews* prong.

   3.  Defendants' Interests Do Not Outweigh Those of the Plaintiffs

   The third *Mathews* factor also favors Plaintiffs, because Defendants cannot show any interest or burden which outweighs the protections required for Plaintiffs' liberty interests. *See*

*Kovac*, 363 F. Supp. 3d at 758, n. 11 ("[w]hile the Government has a significant and compelling interest [in combating terrorism], an American citizen placed on the No Fly List [...] has countervailing liberty interests and is entitled to a meaningful opportunity to challenge that placement"); *see also id.* ("an individual's inclusion on the No Fly List [...] and the dissemination of that list are accomplished without any judicial involvement or review, and according to a standard of proof that is far less when typically required when the deprivation of significant constitutional liberties are implicates"); *Kable*, 391 F. Supp. 3d at 584 ("[g]iven the consequences that issue out of a person's inclusion in the TSDB, the [c]ourt concludes that DHS TRIP, as is currently applies to an inquiry or challenge concerning inclusion in the TSDB, does not provide to a Unites States citizen a constitutionally adequate remedy under the Due Process Clause"). Accordingly, all three *Mathews* factors weigh in Plaintiffs' favor, and Defendants' Motion fails as a matter of law. *See also Tarhuni v. Sessions*, No. 3:13-cv-00001, 2018 U.S. Dist. LEXIS 125972, *39-40 (D. Or. July 27, 2018) ("the [c]ourt concludes [p]laintiff has sufficiently pleaded a procedural due-process claim on the basis of the government's deprivation of his right to travel as a result of his continued placement in the TSDB, and, therefore, the [c]ourt denies [d]efendants' [m]otion [to dismiss] as to this claim").

**B.     Plaintiffs Adequately Allege Violations of Their Substantive Due Process Rights**

Pursuant to the Fifth Amendment's requirement of substantive due process, government action that infringes certain fundamental liberty interests is forbidden, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. Doc. 1 at ¶¶ 125-126; *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Plaintiffs' Complaint identifies several interests requiring substantive due process protections. *See, e.g.*, Doc. 1 at ¶ 128 (freedom of religion and the right to exercise it); *id.* at ¶ 127 (the right to travel), and so on.

Contrary to Defendants' assertions that Plaintiffs fail to identify fundamental liberty interests for this analysis, Plaintiffs' Complaint sufficiently alleges fundamental liberty interests, such as the aforementioned herein. *Id.* at ¶ 100 ("[t]he right to travel, both domestically and abroad, is a fundamental liberty interest, and the Supreme Court has recognized that 'freedom of movement across frontiers [...] may be as close to the heart of the individual as the choice of what he eats, or wears, or reads'") (quoting *Kent*, 357 U.S. at 126); *see also* Doc. 1 at ¶ 101 ("restrictions on the freedom to practice sincerely held religious beliefs are among the deprivations of liberty the Due Process Clause was designed to protect against"). Defendants cannot reasonably assert that the First Amendment's guarantee of the freedom to exercise religion is not "objectively, deeply rooted in this Nation's history" as they attempt to do here. Doc. 9 at 25 (quoting *Wash. v. Glucksberg*, 521 U.S. 702, 720-21 (1997)) (internal citations omitted)), especially as the "freedom to exercise religion" is "actually spelled out in the Constitution." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2625 (2015).

In addition, Plaintiffs sufficiently allege that "Defendants' actions in depriving Plaintiffs of their protected liberty interests were not narrowly tailored." Doc. 1 at ¶¶ 130-131, 133; *id.* at ¶ 132 ("Defendants' actions in depriving Plaintiffs of their protected liberty interests were not narrowly tailored, as Defendants could extensively screen Plaintiffs prior to traveling, rather than prohibiting them altogether"). Accordingly, Plaintiffs plausibly allege violations of their substantive due process rights. As Plaintiffs plead numerous interests warranting substantive due process protections that Defendants fail to narrowly address, the government did not meet its burden when it "took actions which deprived Plaintiff[s] of [their] protected interests." *Id.* at ¶¶ 130-132. Therefore, Plaintiffs respectfully request that this Court deny Defendants' Motion.

C.      **Plaintiffs Appropriately Seek Relief Under the Administrative Procedure Act**

In their Motion to Dismiss, Defendants assert that this Court should dismiss Plaintiffs' APA

claim because of matters "committed to agency discretion." Doc. 9 at 31. Defendants also contend

that Section 46110 provides an adequate remedy for Plaintiffs' adequacy claims. *Id.* at 27.  They

further argue that Plaintiffs have not identified a final agency action where APA review would be

applicable. *Id.* at 21.

Under the APA, a reviewing court must affirm an agency decision unless it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Here, Plaintiffs "plausibly alleged that the Government's redress procedures do not satisfy the due

process rights and are therefore 'contrary to a constitutional right,' and 'otherwise not in

accordance with law.'" *Wilwal*, 346 F. Supp. 3d at 1308 (quoting 5 U.S.C. § 706(2)(A), (B)); s*ee*

*also* Doc. 1 at ¶ 139 ("[t]he lack of criteria provided to Plaintiffs […] violates the requirements of

the Fifth Amendment of the U.S. Constitution, and is therefore arbitrary and capricious, and should

be set aside as violating the APA"). As the *Kovac* court noted, ("[f]or the same reasons previously

discussed in the court's procedural due process analysis, it concludes that Plaintiffs' factual

allegations make plausible their claim that Defendants' actions were arbitrary and capricious, an

abuse of discretion, or otherwise not in accordance with law") 363 F. Supp 3d at 758; *see also*

*Wilwal*, 346 F. Supp. 3d at 1308 (same). Therefore, Plaintiffs' APA claims are sufficiently alleged,

as Plaintiffs adequately identify final agency action where APA review is applicable.

As to Defendants' discretion argument, the APA provides for broad judicial review of

agency action. The Supreme Court has articulated "a 'strong presumption' favoring judicial review

of administrative action." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (quoting *Bowen*

*v. Mich. Academy of Family Physicians*, 476 U.S. 667, 670 (1986)); *see also Regents of the Univ.*

*of Cal. v. DHS*, 908 F.3d 476, 496 (9th Cir. 2018) (quoting *City of Arlington v. FCC*, 569 U.S. 290, 299 (2013)) (with respect to agencies, "'[b]oth their power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires'"). In adjudicating Plaintiffs' DHS TRIP complaints, and those for similarly situated individuals, Defendants have "no discretion to refuse to perform" or "to perform" in "such a way as to be meaningless." *New York v. Heckler*, 578 F. Supp. 1109, 1119 (E.D.N.Y. 1984) (internal citations omitted). Accordingly, this assertion by Defendants also fails, as Plaintiffs assert that Defendants' actions and policies were "meaningless" and therefore in violation of the APA. *See* Doc. 1 at ¶¶ 136-140.

Last, despite Defendants' portrayal that Section 46110 provides an adequate remedy for claims like this, reviewing courts have repeatedly held that APA claims challenging the DHS TRIP process are properly before district courts. *See Mohamed,* 2013 U.S. Dist. LEXIS 25340 at *5-6 ("we do not fairly discern from either grant of authority a congressional intent to remove such claims [about the adequacy of the DHS TRIP redress procedures] from review of the district court"); *see also Ibrahim,* 538 F.3d at 1256 ("[t]he No-Fly List is maintained by the Terrorist Screening Center, and Section 46110 doesn't apply to that agency's actions. The district court therefore retains original jurisdiction over Ibrahim's APA claim"). For the reasons set forth throughout this Response, Section 46110 does not provide an adequate remedy to hear Plaintiffs' claims, as "it makes sense that" APA claims be before a court "with the ability to take evidence." *Id.* at 1256.

**D.    Plaintiffs' First Amendment Claims Survive 12(b)(6)**

The First Amendment to the U.S. Constitution safeguards the freedom to worship. U.S. Const. amend. I ("Congress shall make no law […] prohibiting the free exercise [of religion]

[…]"). In this lawsuit, Plaintiffs sufficiently allege that Defendants' actions and policies substantially burden their religious practice. Doc. 1 at ¶¶ 15-17, 20, 52, 80-81, 86, 145 (alleging that Plaintiffs are Muslims with sincerely held religious beliefs that require traveling to Saudi Arabia to complete Hajj and pilgrimage obligations, but are now prohibited from doing so due to their No Fly List designation). Due to their sincerely held religious beliefs, travel to Saudi Arabia for Hajj pilgrimage is not merely desired, but mandatory. *See, e.g., United States v. Robertson*, No. 6-12-cr-63, 2015 U.S. Dist. LEXIS 82693, *22 n.16 (M.D. Fla. Jun. 25, 2015) ("[t]he Umrah is a voluntary pilgrimage to Mecca that Muslims can perform any time during the year — in contrast to the Hajj, **a compulsory pilgrimage** that can only be performed during the last month of the Islamic calendar") (emphasis added). Here, Plaintiffs note that, as consistent with their sincerely held religious beliefs, both have traveled to Saudi Arabia for Umrah pilgrimages in the past, and hope to do so again in the future. Doc. 1 at ¶¶ 15-17, 80-81. They both also plead that they still need to fulfill their mandatory obligation to complete Hajj pilgrimages, which they are currently prohibited from doing altogether, as Plaintiffs further allege that the No Fly List presumably bars all international travel. *Id.* Therefore, Plaintiffs sufficiently allege a violation of their rights to exercise their sincerely held religious beliefs under the First Amendment.

To the extent this Court requires Plaintiffs to show that this substantial burden on their religious exercise is not stemming from a valid law of general applicability, Plaintiffs alternatively seek leave to amend their Complaint to clarify this legal theory.[7]

---

[7] In accordance with Local Rule 7(i), Plaintiffs hereby attach a proposed Amended Complaint. Again, Plaintiffs make this request in the alternative. This proposed Amended Complaint includes an allegation that the No Fly List disproportionately affects Muslims and their sincerely held religious beliefs.

**E.      Plaintiffs Sufficiently Plead Their Allegations Against DOJ and CBP Heads**

As set forth above, the TSC is the entity which maintains the No Fly List. Doc. 1 at ¶ 8;

Doc. 9-1 at 3. The CBP and TSA are subsets of the DHS, which work to secure U.S. borders and

airports. Doc. 1 at ¶¶ 3-5. The DOJ oversees the FBI, which in turn oversees the TSC. *Id.* at ¶¶ 6-

8. Plaintiffs here challenge "the inter-agency actions of the TSC and TSA,"[8] as well as other DOJ

and DHS subcomponents. Plaintiffs further allege that they have both experienced reputational

damage at the hands of DOJ agents, which is plausibly related to their continued placements on

the No Fly List, as the FBI oversees the TSC. Doc. 1 at ¶¶ 48-49, 75-76.

Due to the nature of Plaintiffs' continued placements on the No Fly List, and their

respective experiences with DHS and DOJ policies and actors, Plaintiffs properly allege their

claims against *all* Defendants herein, and Defendants' Motion to Dismiss fails as a matter of law.

**F.      Equal Access Justice Act Claims Apply to Pending Cases, and Put Parties on Notice**

The Equal Access to Justice Act ("EAJA") applies to "any civil action which is pending

on, or commenced on or after" October 1, 1981, which is the Act's effective date. *Photo Data, Inc.*

*v. Sawyer*, 533 F. Supp. 348, 350 (D.D.C. 1982); *see also* 28 U.S.C. § 2412(d)(1)(A). Section 202

of the EAJA states that the Act's purpose "is to supplant the economic deterrence to defending

against unreasonable government action." *Photo Data*, 533 F. Supp. at 352; *see also* 5 U.S.C. §

504. In order to "ensure evenhandedness" courts reviewing EAJA claims "must scrutinize not only

the government's theory in defending the legal issues raised but also the occurrences that impelled

[the] plaintiff to bring this action." *Photo Data*, 533 F. Supp. at 352.

Plaintiffs' EAJA claim satisfies this requirement, as this lawsuit constitutes a pending action

commenced after 1981. *See generally* Doc. 1. While Defendants argue that this claim is premature,

---

[8] *Mohamed*, 2013 U.S. App. LEXIS 26340 at *5-6.

Plaintiffs bring this claim in order to put the relevant parties on notice, as well as for the purposes of preserving their right to the relief sought from Defendants. The relief sought here includes, but is not limited to, "attorneys' fees and costs as provided by any applicable provision of the law against all Defendants." Doc. 1 at 19, Prayer for Relief.

For the same reasons that receiving an award of attorneys' fees pursuant to EAJA at this stage would be premature, dismissal of this claim prior to final judgment is equally premature.

## V.      IN THE ALTERNATIVE, PLAINTIFFS REQUEST LEAVE TO AMEND

To the extent this Court may find any of Plaintiffs' claims barred or insufficiently alleged, Plaintiffs respectfully request leave to amend their Complaint to cure any defect, clarify applicable legal theories, and add new facts. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely given when justice requires. *Polsby v. Thompson*, 201 F. Supp. 2d, 45, 51-52 (D.D.C. 2002). This District has previously held that "when a court denies a motion to amend a complaint, the court must base its ruling on a valid ground and provide an explanation." *Id.* The burden is on the party opposing amendment to show that there is a reason to deny leave. *In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32 (D.D.C. 2003).  In instances where courts deny leave to amend, absent a satisfactory reason for doing so, such as "undue delay, bad faith or dilatory motive [...] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…[or] futility of amendment […] leave sought to amend a complaint  should […] be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Firestone v. Firestone*, 316 U.S. App. D.C. 152, 182 (D.C. Cir. 1996) ("although the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is a sufficient reason"). For the Court's consideration, and in compliance with D.D.C. LR 7(i), a proposed Amended Complaint is filed herewith as Plaintiffs'

Exhibit B.  Again, Plaintiffs present this request, and the proposed Amended Complaint, in the alternative to the reasons supporting dismissal of Defendants' Motion as set forth above.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court deny the Defendants' Motion to Dismiss in its entirety.

Respectfully submitted this 6th day of April, 2020.

*/s/ Christina A. Jump*
Christina A. Jump
D.C. ID No. TX151
Leila E. Mustafa
D.C. ID No. TX0169
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75081
Tel: (972) 914-2507
Fax: (972) 692-7454
cjump@clcma.org
lmustafa@clcma.org
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of April, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Christina A. Jump*
Christina A. Jump
*Attorney for Plaintiffs*