**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ASHRAF MANIAR and UMAIMA SHAIKH,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security,[1] *et al.*,<br><br>        Defendants. | Civil Action No. 19-3826 (EGS) |

**MEMORANDUM OPINION**

Plaintiffs Ashraf Maniar ("Mr. Maniar") and Umaima Shaikh ("Ms. Shaikh) (collectively, "Plaintiffs"), two U.S. citizens married to each other, bring this action asserting constitutional and procedural claims related to their alleged placement in the Terrorist Screening Dataset ("TSDS"). *See* Pls.' Third Amend. Compl. ("TAC"), ECF No. 36.[2] Plaintiffs have sued various federal government officials in their official capacities (collectively, "Defendants" or "the government"),

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current government officials holding these positions are "automatically substituted as" Defendants for their predecessors.
[2] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

including Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); Melanie Harvey, Administrator of the Transportation Security Administration ("TSA"); Pete R. Flores, Acting Commissioner of U.S. Customs and Border Protection ("Customs"); Pam Bondi, Attorney General of the United States; Brian Driscoll, Director of the Federal Bureau of Investigation ("FBI"); and Michael Glasheen, Director of the Terrorist Screening Center ("TSC"). *Id.* Additionally, Plaintiffs have sued Unknown TSC and FBI employees in their official and individual capacities. *Id.*

Pending before the Court is the Official Capacity Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint, ECF No. 43; and Memorandum in Support, ECF No. 43-1 (collectively, "Defs.' Mot."). Upon careful consideration of the parties' briefing materials, the relevant legal authority, and the entire record herein, the Court **GRANTS** the government's Motion to Dismiss.

## I.   Background

The following facts reflect the allegations in the Third Amended Complaint and the documents incorporated by reference therein, which the Court assumes are true and construes in Plaintiffs' favor for the purposes of deciding this motion. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).

### A. Statutory and Regulatory Background

The TSC, a multi-agency executive organization, is administered by the FBI in coordination with DHS, the Department of State, the DOJ, and the Office of the Director of National Intelligence. *See* FBI, *Overview of the U.S. Government's Terrorist Watchlisting Process and Procedures*, 1 (Apr. 2024), https://www.fbi.gov/file-repository/counterterrorism/terrorist-watchlisting-transparency-document-april-2024-050224.pdf/view [hereinafter "Watchlisting Overview"].[3] The TSC consolidates the U.S. government's terrorist watchlists into a single database known as the TSDS, which "contains biographic and biometric identifying information . . . of known and suspected terrorists." *Id.* at 2. This information is not publicly available and only accessible "to persons who have a need to know, such as federal law enforcement officials, for their

---

[3] Plaintiffs' Third Amended Complaint incorporates by reference the Overview of the U.S. Government's Watchlisting Process and Procedures as of September 2020. *See, e.g.*, TAC, ECF No. 36 at 15 n.5. Accordingly, the Court takes judicial notice of the currently available Watchlisting Overview. *Patrick v. Dist. of Columbia*, 126 F. Supp. 3d 132, 135–36 (D.D.C. 2015) ("Although a court generally cannot consider matters beyond the pleadings at the motion-to-dismiss stage, it may consider 'documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies . . . .'" (citation omitted)); *Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 103 (D.D.C. 2017) (noting that courts may take judicial notice of "official, public documents"); *Detroit Int'l Bridge Co. v. Gov't of Canada*, 133 F. Supp. 3d 70, 85 (D.D.C. 2015) (same conclusion for "public records and government documents available from reliable sources").

authorized screening and vetting functions." *Id.* Inclusion in the TSDS results from a multi-step nomination process in which U.S. government agencies and foreign partners "nominate" individuals where there is enough credible investigative information to establish "reasonable suspicion that the person is engaged, has been engaged, or intends to engage in conduct constituting, in preparation for, or in aid or in furtherance of terrorism and/or terrorist activities." *Id.* at 3. After an individual is nominated, the TSC reviews the nomination and accepts or rejects the person for inclusion in the TSDS. *Id.* at 4.

Once individuals are added to the database, the TSC sorts them into subset lists, known as the No Fly List and the Selectee List, which are used by TSA "to secure commercial air travel against the threat of terrorism." *Id.* at 2. "Nominations to the No Fly List or Selectee List . . . must satisfy additional criteria beyond that required for inclusion in the TSDS as a known or suspected terrorist." *Id.* at 5. Individuals are placed on the No Fly List, prohibiting them from boarding an aircraft, if they present a threat of (1) "committing an act of international . . . or domestic terrorism . . . with respect to an aircraft"; (2) "committing an act of domestic terrorism . . . with respect to the Homeland"; (3) "committing an act of international terrorism . . . against any [U.S. government]

4

facility abroad"; or (4) "engaging in or conducting a violent act of terrorism and [ ] is operationally capable of doing so." *Id.* at 4. In addition to the inability to travel via aircraft, Plaintiffs allege that "[p]lacement on the No Fly List also results in family separation, the inability to travel to complete religious pilgrimage, the inability to engage in chosen business ventures or employment, reputational harms and more." TAC, ECF No. 36 ¶¶ 110–11.

Placement on the Selectee List subjects individuals to enhanced screening before boarding a flight. Watchlisting Overview at 4. The U.S. government does not publicly disclose who is on either TSDS list or the criteria for placement on the Selectee List. *Id.; see* TAC, ECF No. 36 ¶ 112. Plaintiffs allege that the enhanced screening that individuals on the Selectee List are subject to while traveling "result[s] in extensive delays and public shame." TAC, ECF No. 36 ¶ 113. Additionally, Plaintiffs allege that "Selectee Listed persons often encounter extreme difficulty traveling abroad, including being detained or prohibited from entering the country, based on disseminating the TSDS data to other governments." *Id.* ¶ 114.

### B. Factual Background

Mr. Maniar and Ms. Shaikh are U.S. citizens of Pakistani national origin. TAC, ECF No. 36 ¶¶ 1–2. Plaintiffs identify as practicing Muslims, *id.* ¶¶ 15, 67; and neither has a history of

mental health concerns or criminal activity. *Id.* ¶¶ 14, 16, 65-66. As practicing Muslims, Plaintiffs hope to participate in religiously mandated pilgrimages, which require carefully thought-out travel arrangements. *Id.* ¶¶ 18, 68.

### 1. **Mr. Maniar's Travel Difficulties**

Mr. Maniar's travel difficulties began in May 2016, but after being prohibited from traveling in May 2017, he initiated a redress inquiry with the DHS Traveler Redress Inquiry Program ("DHS TRIP"). *Id.* ¶¶ 26-28. Mr. Maniar was permitted to fly from Boston to Los Angeles in November 2017, *id.* ¶ 30; but on December 14, 2017, FBI agents raided his home. *Id.* ¶¶ 30-32. The agents had a warrant to take electronics, but they also took Mr. Maniar's passport. *Id.* ¶ 32. In addition to the FBI searching their home, FBI agents have questioned Mr. Maniar and Ms. Shaikh's friends, which Plaintiffs claim have damaged [their] reputation and violated [their] privacy interests." *Id.* ¶¶ 59-61; 100-102.

A few days later, on December 18, 2017, Mr. Maniar attempted to fly from Nevada to Georgia for his wedding, but he was unable to print his boarding pass, escorted out of the airport by security, and prohibited from flying. *Id.* ¶¶ 34-36.

Suspecting that he was on TSC's No Fly List, Mr. Maniar initiated a second inquiry with DHS TRIP "to acquire information as to whether he [was] on the No Fly List, the reasons for that

designation, if any, and a way to appeal any determination." *Id.* ¶ 37. Mr. Maniar received no response, and on June 7, 2018, his attorneys filed a Petition for a Writ of Mandamus seeking the court to compel DHS to respond. *Id.* ¶ 40. On June 27, 2018, DHS sent Mr. Maniar a letter informing him that he was on the No Fly List; however, the letter did not provide any reasoning for the placement. *Id.* ¶¶ 41-42. Eventually, after additional requests from counsel, DHS informed Mr. Maniar that he was on the No Fly List partially due to his "association and extensive communication with a known extremist located in the United Kingdom who has supported terrorist organizations." *Id.* ¶ 44. The government informed Mr. Maniar that this was the only information it could provide due to the classified nature of additional details. *Id.* ¶ 45.

On August 18, 2020, DHS TRIP notified Mr. Maniar that he was removed from the No Fly List. *Id.* ¶ 48. DHS TRIP's reasoning stated:

> [a]fter further review of your inquiry, we have determined that you [Plaintiff Maniar] no longer satisfy the criteria for placement on the No Fly List. You have been removed from the No Fly List and will not be placed back on the no Fly List based on currently available information. The change in your status was based on the totality of available information, including information you provided to DHS TRIP.

*Id.*

Mr. Maniar's traveling difficulties did not, however, end there. Less than two weeks after receiving the government's notice that he was no longer on the No Fly List, Mr. Maniar was subject to "extensive individualized questioning" during a layover in Turkey on his way to Pakistan. *Id.* ¶ 50. Mr. Maniar was allowed to board his flight to Pakistan, however, upon arrival, he was detained by the Pakistani officials, handcuffed, and asked questions about his travel plans. *Id.* ¶ 51. The Pakistani officials then placed a black bag over his head and took him to an unknown location where he was questioned for three days. *Id.* ¶¶ 52-53. The Pakistani Officials informed him that "the U.S. shared information indicating he was involved in terrorist activity." *Id.* ¶ 54. He was immediately directed to board a flight back to the United States where he was questioned again by DHS agents for thirty minutes upon landing. *Id.* ¶¶ 55-56.

### 2. Ms. Shaikh's Travel Difficulties

Ms. Shaikh's first alleged difficulty traveling was in July 2018 while traveling to Karachi, Pakistan for her brother's wedding. *Id.* ¶ 74. After checking in for her flight, Ms. Shaikh was informed that she needed to get her boarding pass from a ticketing agent. *Id.*¶ 73. When she arrived at the counter, airline officials "informed her they could not issue [her] the boarding pass and could not tell her why." *Id.* ¶ 75. She was

unable to board the flight and missed her brother's wedding. *Id.* ¶ 76.

Thereafter, on August 13, 2018, Ms. Shaikh submitted a redress inquiry to DHS TRIP "to determine whether she [was] on the No Fly List, the reasons for that designation, if any, and a way to appeal any No Fly List designation." *Id.* ¶ 78. In response, DHS TRIP notified Ms. Shaikh that she was on the No Fly List and informed her that she could request additional information, respond to the information provided, and request an administrative review of her status. *Id.* ¶ 82. On December 26, 2018, Ms. Shaikh and her counsel requested an administrative review of her placement on the No Fly List, asking for all information related to her placement on the list. *Id.* ¶ 85.

When she did not receive a response from DHS TRIP, Ms. Shaikh filed a Petition for a Writ of Mandamus seeking an order compelling DHS to respond to her request. *Id.* ¶ 86. On February 3, 2020, DHS TRIP informed Ms. Shaikh that she was on the No Fly List partially due to her "provision of support to an individual, made with the knowing purpose of furthering the individual's desire to join a foreign-based terrorist organization, as well as your association and communication with multiple known extremists." *Id.* ¶ 88. The letter also stated that additional reasons could not be given "due to law enforcement and security concerns." *Id.* ¶ 89. Ms. Shaikh filed

9

an administrative appeal on March 9, 2020, *id.* ¶ 91; and on July 15, 2020, DHS TRIP notified Ms. Shaikh that she was no longer on the No Fly List, with the same statement that explained Mr. Maniar's removal from the list, *id.* ¶ 92.

A few days after notification of her removal from the No Fly List, Ms. Shaikh took a flight from Raleigh, North Carolina to Atlanta, Georgia. *Id.* at 93. When she was again unable to print her own boarding pass, she had to speak with an airline clerk who "had to get permission from . . . the TSC[] before issuing [her] a boarding pass." *Id.* ¶ 94. She and her young son's boarding passes had both been marked with "SSSS"—a notation typical for individuals in the TSDS and subset watchlists—indicating selection for secondary security screening. *Id.* ¶¶ 95–97.

Plaintiffs believe that they are still included within the TSDS and listed on the Selectee List. *Id.* ¶ 57. However, the government will not release records or confirmation regarding whether an individual is on the Selectee List. *Id.* ¶ 127. In January 2023, the government acknowledged the authenticity of copies of the No Fly List and Selectee List discovered by a Swiss "hacktivist." *Id.* ¶¶ 128–130. Mr. Maniar's name was on the Selectee List in multiple discovered versions. *Id.* ¶ 132. Plaintiffs allege that these lists were posted on the internet, making them available to the public. *Id.* ¶¶ 130-33.

### C. Procedural Background

In December 2019, after filing an administrative appeal to DHS TRIP regarding Mr. Maniar's status on the No Fly List, Plaintiffs filed this lawsuit. *See* Compl., ECF No. 1. Plaintiffs filed an Amended Complaint on August 12, 2020 alleging: (1) violations of Fifth Amendment right to procedural and substantive due process (Counts 1 and 2); (2) violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.,* due to alleged inadequacies in DHS TRIP redress process (Count 3); (3) violations of First Amendment rights (Count 4); (4) entitlement to attorney's fees and costs under Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412. *See* Am. Compl., ECF No. 19.

On September 28, 2020, Defendants moved to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. *See* Second Mot. to Dismiss for Lack of Jurisdiction, ECF No. 23-1. Defendants argued that as an initial matter, the Court lacked jurisdiction over Plaintiffs' claims because they lacked standing. *Id.* at 27—31. On March 30, 2023, this Court issued a Memorandum Opinion granting Defendants' Motion to Dismiss. *See generally Maniar v. Mayorkas*, Civil Action No. 19-3826, 2023 WL 2709040 (D.D.C. Mar. 30, 2023). First, the Court concluded that, since Plaintiffs were removed from the No Fly List in August

11

2020, they failed to allege any "ongoing" injury and thus lacked standing to pursue their No Fly List claims. *Id.* at *10-*17.

The Court also concluded that Plaintiffs lacked standing as to their Selectee List claims because they failed to establish that a favorable decision from the Court would redress their alleged injuries. *Id.* at *17-*21. Specifically, the Court found that the Second Amended Complaint did not indicate how the specific declaratory and injunctive relief Plaintiffs sought had to do with their status on the Selectee List. *Id.* at 64. Rather, Plaintiffs' Selectee List claims were "so intertwined" with their No Fly List claims that it was difficult to evaluate their Selectee List claims on their own. *Id.* at 63. Rather than dismiss the action, however, the Court permitted Plaintiffs to file an amended complaint "to disentangle their Selectee List claims from their nonjusticiable No Fly List claims." *Id.* at *20.

On May 1, 2023, Plaintiffs filed their Third Amended Complaint, alleging five counts: (1) Violation of Fifth Amendment Procedural Due Process Rights (against all Defendants); (2) Violation of Substantive Due Process Rights (against all Defendants); (3) Violation of the APA (against all Defendants); (4) Violation of the First Amendment (against all Defendants); (5) Violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.* (against all

Defendants); (6) Nominal and Compensatory Damages (against the unknown TSC and/or FBI employees); and (7) Attorney's Fees under the EAJA (from all Defendants). TAC, ECF No. 36 ¶¶ 141-219.[4]

On September 20, 2023, the Official Capacity Defendants filed a motion to dismiss. *See* Defs.' Mot., ECF No. 43. Plaintiffs filed their response on February 1, 2024, *see* Pls.' Response to Official Capacity Defs.' Mot. to Dismiss Pls.' Third Am. Compl. ("Pls.' Opp'n"), ECF No. 45; and Defendants filed their reply on March 13, 2024, *see* Defs.' Reply Mem. in Support of Official Capacity Defs.' Mot. to Dismiss Pls.' Third Am. Compl. ("Defs.' Reply"), ECF No. 46.[5]

---

[4] The TAC includes numerous allegations related to Plaintiffs' former placement on the No Fly List. Because the Court determined that Plaintiffs failed to establish standing to pursue their No Fly List claims, the Court construes these allegations as background information supporting their Selectee List claims. Plaintiffs briefly argue in their Opposition that "[jurisdiction [e]xists for [their] No Fly List Claims," but neither ask the Court to reconsider its prior determination, nor provide legal support for the brief argument. *See* Opp'n, ECF No. 45 at 16-17. Accordingly, the Court does not construe the TAC to assert any claims based on Plaintiffs' prior placement on the No Fly Lists and therefore does not need to address whether there is jurisdiction for such claims.

[5] On March 25, 2024, Plaintiffs filed a Notice of Supplemental Authority, bringing to the Court's attention a recent Supreme Court decision, *see* Pls.' Notice of Suppl. Authority ("Pls.' Suppl."), ECF No. 47; and Defendants filed a response on April 3, 2024. *See* Defs.' Response to Pls.' Notice of Suppl. Authority ("Defs.' Suppl. Response"), ECF No. 49. The Court previously explained why the issues raised in the underlying case from the Court of Appeals for the Ninth Circuit ("Ninth Circuit") do "not provide a helpful analog." *Maniar*, 2023 WL 2709040, at *13 n.16 (quoting *Jibril v. Maykorkas*, No. 19-cv-2457 2023 WL 2240271, at *7 n.2 (D.D.C. Feb. 27, 2023). The Supreme Court decision

Defendants' motion is now ripe for the Court's adjudication.

## II.  Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss, a complaint "must contain sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a 12(b)(6) motion, the Court should liberally view the complaint in the plaintiff's favor, accepting all factual allegations as true, and giving the plaintiff the benefit of all inferences that can be drawn therefrom. *Redding v. Edwards,* 569 F. Supp. 2d 129, 131 (D.D.C. 2008) (citing *Kowal v. MCI Commc'ns Corp., 16* F.3d 1271, 1276 (D.C. Cir. 1994)). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While detailed factual allegations are not necessary, [the] plaintiff must plead enough facts to 'raise a right to relief above the speculative level.'" *Morello v.*

---

affirming the underlying case from the Ninth Circuit does not change the Court's analysis.

14

*D.C.,* 73 F.Supp.3d 1, 3 (D.D.C.2014) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The court "may consider attachments to the complaint as well as the allegations contained in the complaint itself." *English v. D.C.,* 717 F.3d 968, 971 (D.C. Cir. 2013).

### III. Analysis

#### A.    Due Process

The Due Process Clause guarantees that no person "shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This guarantee "has both procedural and substantive components." *Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*, 319 F. Supp. 3d 491, 499 (D.D.C. 2018). To adequately plead either type of due process claim, a plaintiff must establish: "(i) deprivation of a protected liberty interest or property interest; (ii) by the government; (iii) without the process that is 'due' under the Fifth Amendment." *N.B. ex rel. Peacock v. Dist. of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015) (citations omitted); *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'"). The first inquiry is a threshold question, and "[o]nly after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due

process." *Am. Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

Here, Plaintiffs allege that their placement and retention on the Selectee List violates both procedural and substantive due process. "[T]he threshold element of both claims is the deprivation of a protected interest." *Ahmed v. Kable*, Civ. Action No. 21-3333, 2023 WL 6215024, *17 n.29 (D.D.C. Sept. 25, 2023) (citing *Gen. Elec. Co.*, 610 F.3d at 117 (procedural); *Fraternal Ord. of Police v. Dist. of Columbia*, 502 F. Supp. 3d 45, 60 (D.D.C. 2020) (substantive), *aff'd*, 45 F.4th 954 (D.C. Cir. 2022)).

### 1. Plaintiffs Have Failed to Plead the Deprivation of a Liberty Interest Stemming From their Alleged Inclusion on the Selectee List

Plaintiffs allege that their inclusion on the Selectee List—or otherwise within TSDS—infringes upon their right to travel, religious exercise, and reputation. Pls.' Opp'n, ECF No. 45 at 17-21, 22-23. Additionally, Mr. Maniar alleges that Defendants' conduct infringes upon his right to practice his chosen employment. *See Id.* at 21. Defendants argue that none of these alleged liberty interests satisfy the threshold question. *See* Defs.' Mot., ECF No. 43-1 at 25. For the reasons explained below, the Court concludes that Plaintiffs have failed to adequately plead that they have been deprived of a liberty interest to support their due process claims.

### a. Right to Travel

Plaintiffs do not allege that their placement on the Selectee List—or within the TSDS more broadly—has placed any restrictions on their ability to travel via plane. *See generally* TAC, ECF No. 36 ¶¶ 26-105. Rather, Plaintiffs assert that their alleged status within the TSDS makes air travel "difficult, humiliating, and often costly[.]" Pls.' Opp'n, ECF No. 45 at 18. In response, Defendants argue that regardless of the extent to which Plaintiffs have a right to travel, Plaintiffs' alleged travel delays or difficulties do not amount to a deprivation of any such right. *See* Defs.' Mot., ECF No. 43-1 at 25-31. The Court agrees.

While Plaintiffs plead two distinct instances of facing difficulties while traveling via plane since being removed from the No Fly List, neither Plaintiff alleges that he or she has been prevented from flying altogether. *See* TAC, ECF No. 36 ¶¶ 26-105. For example, Ms. Shaikh's only allegation is that she "could not obtain a boarding pass without speaking to a ticketing counter clerk." *Id.* ¶ 94. Once she obtained her boarding pass, it was marked with "SSSS," indicating "Secondary Security Screening Selection," *id.* ¶ 95; however, Ms. Shaikh does not allege that she was subject to additional screening, that she missed a flight, or that she was otherwise delayed

17

during this trip. *Id.* ¶ 95.[6] In contrast, Mr. Maniar's alleged

travel difficulties appear more burdensome. Mr. Maniar alleges

that during a trip to Pakistan, he was subjected to extensive

questioning when he arrived in Turkey for a layover and upon his

arrival in Pakistan. *Id.* ¶¶ 50-55. While in Pakistan, Mr. Maniar

asserts that he was detained and questioned for three days by

Pakistani officials before being forced to board a plane back to

the United States. *Id.* ¶ 55. Thereafter, upon his arrival in the

United States, Mr. Maniar was questioned by DHS agents for

approximately thirty minutes. *Id.* ¶ 56.

   Examining Mr. Maniar and Ms. Shaikh's alleged travel

difficulties after their removal from the No Fly List, the Court

concludes that their alleged placement on the Selectee List has

not substantially burdened their right to travel. First, Ms.

Shaikh has failed to allege any burden to her air travel beyond

having to obtain her boarding pass from a ticketing agent and

the boarding pass being designated for secondary screening. *Id.*

¶¶ 94-95. Compared to delays faced by everyday air travelers,

and even other cases where plaintiffs alleged travel

---

[6] Plaintiffs' Opposition asserts that Ms. Shaikh "faced scrutiny and questioning that led to her missing flights, necessitating the cost and lost time of rebooking the flight" even after she was removed from the No Fly List. Pls.' Opp'n, ECF No. 45 at 20 (citing TAC, ECF No. 36 ¶¶ 93-101). However, the paragraphs cited from the Third Amended Complaint raise no such factual allegations, and Plaintiffs have not provided any details about what type of screening she was subjected to nor how long the delays were.

difficulties due to placement on the Selectee List, Ms. Shaikh's allegations are mere inconveniences. *See, e.g.*, *Abdi v. Wray*, 942 F.3d 1019, 1031 (10th Cir. 2019) (holding plaintiff's placement on Selectee List did not interfere with right to travel where delays did not "exceed those experienced by many air travelers nor preclude his ability to travel"); *Beydoun v. Sessions*, 871 F.3d 459, 468 (6th Cir. 2017) (concluding the extra security hurdles resulting in delays from ten minutes to an hour "do not amount to a constitutional violation" of plaintiff's right to travel).

As to Mr. Maniar's travel experience, Defendants argue that the bulk of his allegations stem from actions of foreign agents, and "the actions taken by [other countries] are not redressable by this Court." Defs.' Mot., ECF No. 43-1 at 31–32 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Regardless of whether the Court considers the allegations of detention and delay by the Pakistani officials, the Court concludes that Mr. Maniar's singular air travel-related incident is insufficient to establish a substantial interference with his ability to travel. *See El Ali v. Barr*, 473 F. Supp. 3d 479, 509 (D. Md. 2020) (finding that placement on Selectee List deprived plaintiffs of right to travel where they experienced "pattern[s] of multi-hour delays nearly every time they travel . . . amount[ing] to a significant impediment to travel").

19

Moreover, Plaintiffs alleged status on the Selectee List does not affect their ability to travel within the United States by any other mode of transportation. *Busic*, 62 F.4th at 550 (emphasizing there is no "fundamental right to travel *by airplane*" (quoting *Gilmore v. Gonzales*, 435 F.3d 1125, 1137 (9th Cir. 2006)). And to the extent that Plaintiffs have a right to international travel, it "does not include the right to be 'free from screening and delays at the border.'" *Ahmed v. Kable*, No. 21-3333, 2023 WL 6215025, at *17 (D.D.C. Sept. 25, 2023) (quoting *Elhady v. Kable*, 993 F.3d 2018, 219-24). This conclusion is consistent "with the weight of authority, which establishes that travel delays resulting from inclusion on the selectee list 'do not substantially interfere with [the] ability to travel." *Ahmed*, 2023 WL 6215025, at *17 (quoting *Abdi*, 942 F.3d at 1030-31) (collecting cases).

To the extent Plaintiffs argue that their right to travel has been impeded because they are deterred from traveling due to their previous experience, *see* Pls.' Opp'n, ECF No. 45 at 27; this argument has no merit. As the D.C. Circuit has recognized, a law's "effect upon [a plaintiff's] willingness to travel, *i.e.*, to exercise her right to travel, is 'negligible' and does not warrant scrutiny under the Constitution." *Pollack v. Duff*, 793 F.3d 34, 45 (D.C. Cir. 2015) (citing *Kansas v. United States*, 16 F.3d 436, 442 (D.C. Cir. 1994)); *see Matsuo v. United*

*States*, 586 F.3d 1180, 1183 (9th Cir. 2009) ("[N]ot everything that deters travel burdens the fundamental right to travel.").

Finally, Plaintiffs assert that their case "aligns in part" with the Fifth Circuit's decision in *Ghedi v. Mayorkas*, 16 F.4th 456 (5th Cir. 2021), because "it determined that Mr. Ghedi alleged a sufficient harm tied to 'the act of flying, not his destination.'". Pls.' Opp'n, ECF No. 45 at 20-21 (quoting *Ghedi*, 16 F.4th at 465). However, the holding Plaintiffs pick out of *Ghedi* to support their argument is tied to whether Mr. Ghedi alleged an injury in fact sufficient for standing, not whether he sufficiently alleged a due process violation. *Ghedi*, 16 F.4th at 465. In fact, the Fifth Circuit affirmed the district court's dismissal of Ms. Ghedi's due process claims, holding that he *did not* plausibly allege the deprivation of his right to travel where he was required to obtain his boarding pass at the airport, received extra searches upon arrival in the United States after international trip, missed flights and was removed from an airplane twice after boarding. *Id.* at 466-67. It is illustrative that Plaintiffs' alleged difficulties traveling after being removed from the No Fly List are even more minimal than Mr. Ghedi's.

For all these reasons, the Court concludes that Plaintiffs have failed to allege a deprivation of their right to travel from their alleged inclusion on the Selectee List.

### b. Right to Chosen Profession

The Fifth Amendment protects the right to "follow a chosen profession free from unreasonable governmental interference." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538 (D.C. Cir. 2015) (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)). A plaintiff can establish a deprivation of this right by showing that the government's action: (1) "'formally or automatically excludes' her from some category of work," *Campbell v. Dist. of Columbia*, 894 F.3d 281, 289-90 (D.C. Cir. 2018) (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994)); or (2) "has 'the broad effect of largely precluding [the plaintiff] from pursuing her chosen career,'" *id.* (quoting *O'Donnell v. Barry*, 148 F.3d 1126, 1141 (D.C. Cir. 1998) (alteration in original)).

Mr. Maniar alleges that "Defendants' actions infringed upon his right to practice his chosen employment" because his profession requires international and domestic travel, and he cannot travel to maintain his businesses in the United States and abroad. Pls.' Opp'n, ECF No. 45 at 21-22. Defendants argue that since Mr. Maniar has not been barred from traveling, he has failed to allege that he has been deprived of the right to follow his chosen profession. Defs.' Mot., ECF No. 43-1 at 33.

Mr. Maniar's only assertion is that he is unable to travel, and therefore unable to maintain his businesses abroad and here

22

in the United States. Pls.' Opp'n, ECF No. 45 at 21. Aside from Mr. Maniar's trip to Pakistan, which he does not allege was for business purposes, Mr. Maniar alleges no instances where he was unable to travel to a foreign country or unable to travel domestically, let alone unable to travel for business ventures. *See generally* TAC, ECF No. 36. In fact, he fails to allege any tangible harm to his professional life, such as a loss of income or business due to an inability to travel. Furthermore, as explained above, Mr. Maniar's alleged status on the Selectee List does not prevent him from traveling, nor does he allege that it does. *See id.* Without more, the Court fails to see how the Defendants' alleged act of including him within the TSDS is precluding him from maintaining his businesses. Accordingly, the Court concludes that Mr. Maniar has failed to allege a deprivation of such a right.[7]

### c. Religion

Plaintiffs allege that Defendants have "infringe[d] upon their right[] to practice their religion freely by making it

---

[7] The Parties disagree as to the standard that applies in determining whether a plaintiff has adequately demonstrated a deprivation of the right to a chosen profession. *See* Defs.' Mot., ECF No. 43-1 at 33 (arguing that in *Conn v. Gabert*, 526 U.S. 286, 292 (1999), the Supreme Court created a "complete prohibition" standard); Pls.' Opp'n, ECF No. 46 at 21 (citing *Campbell's* "broad effect" standard). However, the Court need not decide whether *Conn* created a stricter standard because even under the more lenient inquiry, the Court's conclusion remains the same.

dangerous, if not impossible, for them to complete their religious pilgrimage obligations." Pls.' Opp'n, ECF No. 45 at 27. Specifically, Plaintiffs allege that because of the treatment that Mr. Maniar was subject to in Pakistan, he and his wife are concerned that they will be subject to similar treatment if they were to attempt to travel internationally to fulfill their religious obligations. *Id.*

Once again, however, Mr. Maniar and Ms. Shaikh's status on the Selectee List does not prevent them from traveling to fulfill their religious obligations. Pointing to Mr. Maniar's experience in Pakistan, Plaintiffs argue that Ms. Shaikh is "concerned about similar treatment were she to travel internationally." *Id.* at 27. To the extent Plaintiffs' argument is that they are deterred from or worried about encountering delays or being detained in other countries, the Court considered and rejected this argument above. Plaintiffs cite no authority to support their argument that a fear of traveling violates their right to religious expression. Thus, for the same reasons that Plaintiffs failed to allege a deprivation of their right to travel, they have failed to allege any deprivation of their right to practice their religion freely.

### d. Reputational Harm

Plaintiffs argue that their due process rights were violated when the "2019 No Fly list and watchlist were at the

very least distributed outside of the 'intragovernmental dissemination' to private airline companies." Pls.' Opp'n, ECF No. 45 at 22-23.

"[R]eputation by itself [is] not a 'liberty' interest protected under the Fourteenth Amendment." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). However, "reputational harm that also alters or extinguishes 'a right or status previously recognized by state law' does implicate the protections of due process." *Khalid*, 2023 WL 2561943, at *4 (quoting *Paul v. Davis*, 424 U.S. 693, 711-12 (1976)). In the D.C. Circuit, there are two theories according to which a plaintiff can establish a due process violation based on a reputational harm. *See Hutchinson v. CIA*, 393 F.3d 226, 231 (D.C. Cir. 2005). Relevant here is the "stigma-plus" test.[8]

Under the "stigma-plus" test, a plaintiff adequately pleads a due process claim where "in addition to reputational harm, [plaintiffs show] that (1) the government has deprived them of some benefit to which they have a legal right . . . or (2) the government-imposed stigma is so severe that it 'broadly

---

[8] Here, Plaintiffs' claims and arguments focus solely on the stigma associated with being labeled a "known or suspected terrorist." *See* TAC, ECF No. 36 ¶ 154; Pls.' Opp'n, ECF No. 45 at 22-23. Accordingly, the Court concludes that the "reputation-plus" test, which focuses on harms resulting from defamation resulting in loss of government employment, is inapplicable here. *See, e.g.*, Jefferson v. Harris, 170 F. Supp. 3d 194, 205 (D.D.C. 2016) (laying out the requirements to plead a reputation-plus claim).

precludes' plaintiffs from pursuing 'a chosen trade or business[.]'" *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010) (quoting *Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003)). Additionally, a plaintiff must show that the government "publicly disclos[ed] [] the allegedly damaging statements." *Orange v. Dist. of Columbia*, 59 F.3d 1267, 1274 (D.D.C. 1995) (collecting cases).

Defendants argue that Plaintiffs have failed to adequately plead a reputational harm infringing upon their due process rights for two reasons. First, Defendants assert that Plaintiffs have failed to establish that the government "publicly" disclosed any TSDS data. *See* Defs.' Mot., ECF No. 43-1 at 34-35. Second, Defendants argue that Plaintiffs failed to identify any change in legal status to meet the "plus factor." *Id.* at 37. The Court concludes that regardless of whether the government's actions constitute "public disclosure" of TSDS data, Plaintiffs failed to establish the loss of a legal right. The only legal rights Plaintiffs argue they lost with the disclosure of the TSDS data is their right to travel and right to employment, *see* Pls.' Opp'n, ECF No. 45 at 23; both of which the Court already concluded Plaintiffs were not deprived of due to their status on the Selectee List.

Accordingly, the Court concludes that Plaintiffs failed to adequately plead a due process violation based on a stigmatized

reputation. Further, the Court concludes that Plaintiffs failed to adequately allege a deprivation of any property or liberty interest. Accordingly, the Court need not reach the question of whether Defendants redress procedures are sufficient nor whether a governmental interest justifies any such action.

## B. Plaintiffs Have Failed to State an Administrative Procedure Act Claim

Next, Defendants argue that Plaintiffs have failed to state a claim under the APA. Defs.' Mot., ECF No. 43-1 at 45-46. Plaintiffs allege that "Defendants' actions in placing [them] on a watchlist without any professed reason is arbitrary, capricious, or an abuse of discretion" under the APA. Pls.' Opp'n, ECF No. 45 at 28. Specifically, Plaintiffs allege that the DHS TRIP redress procedures failed to provide them with a meaningful notice or a meaningful opportunity to challenge their placement on the list. *Id.*; TAC, ECF No. 36 ¶¶ 180-182. Defendants argue that the DHS TRIP redress procedures are "plainly reasonable" balancing "the significant national security interest at stake." Defs.' Mot., ECF No. 43-1 at 46.

"The APA's arbitrary and capricious standard is deferential," *Jackson v. Mabus*, 808 F.3d 933, 936 (D.C. Cir. 2015) (citing *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins.*, 463 U.S. 29, 43 (1983)); and "a court is not to substitute its judgment for that of the agency." *Motor*

27

*Vehicle Manufacturers Ass'n*, 463 U.S. at 43. "Rather the question is whether the agency action was reasonable and reasonably explained." *Jackson*, 808 F.3d at 936 (citing *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014)).

The Court concludes that Plaintiffs have failed to adequately allege any arbitrary or capricious conduct by the Defendants. First, Plaintiffs do not even allege that they submitted DHS TRIP inquiries regarding their status on the Selectee List. *See generally* TAC, ECF No. 36. Regardless, the Defendants' actions in not disclosing the criteria for the Selectee List nor why Plaintiffs are on the Selectee List are reasonable. The criteria for being placed on the Selectee List is not publicly disclosed "because disclosure of the Selectee criteria could give known or suspected terrorists information that may assist in developing strategies to circumvent security screening." Watchlisting Overview at 4. Plaintiffs fail to allege any facts that undermine this rationale. For these reasons, Plaintiffs have failed to establish a plausible APA claim.

### C. Plaintiffs Have Failed to Plausibly Allege a First Amendment Violation

Next, Plaintiffs claim that their placement within the TSDS violates their First Amendment right to free exercise of religion. TAC, ECF No. 36 ¶¶ 185-96. Due to their placement in

28

the TSDS, Plaintiffs allege that they "believe they will be unable to travel to Saudi Arabia to complete religious pilgrimage requirements as observant Muslims, without extensive difficulty and invasive, unjustified and prolonged searches, due to information provided to other countries by Defendants." TAC, ECF No. 36 ¶ 188. The Court concludes that Plaintiffs have failed to plausibly allege a violation of their First Amendment rights.

The Free Exercise Clause prohibits Congress from enacting laws "respecting an establishment of religion." U.S CONST., amend. I § 1. A plaintiff bringing a free exercise case must "show the coercive effect of the enactment as it operated against him in the practice of his religion." *School Dist. Of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 223 (1963). "[A] burden upon religion exists [when governmental action] put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. Of Indiana Employment Security Div.*, 450 U.S. 707, 718 (1981). "[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribed (or proscribes).'" *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 879 (1990) (quoting United States

v. Lee, 455 U.S. 252, 263, n.3 (1982) (Stevens, J, concurring in judgment)).

Here, Plaintiffs' claim is premised on the assertion that they will be unable to travel to complete *Hajj*. However, as discussed in detail above, Plaintiffs have failed to allege that their status on the Selectee List has resulted in significant, frequent travel delays, let alone an inability to travel at all. Plaintiffs assert that they "are subject to secondary screenings nearly every time they fly[,]" *id.;* however, Plaintiffs each only assert one instance of travel since being removed from the No Fly List, and Ms. Shaikh does not allege that she was subject to secondary screenings at all during that trip. TAC, ECF No. 36 ¶¶ 49-56, 93-96. Mr. Maniar's only alleged delays were cause by foreign agents. *Id.* ¶¶ 49-56. For these reasons, Plaintiffs have failed to plausibly allege that their ability to perform their religious pilgrimage has been burdened by their alleged placement on the Selectee List. Because Plaintiffs have failed to do so, the Court need not consider whether the statute that requires the Transportation Security Administration "to use information from government agencies to identify [travelers] who may be a threat to civil aviation or national security," 49 U.S.C. § 114(h)(3)(A), and to "prevent [those] individual[s] from boarding an aircraft, or take other appropriate action with respect to th[em]," *id.* § 114(h)(3)(B); is a neutral law of

30

general applicability, nor whether there is a disparate impact on Muslim Americans.

### D. Plaintiffs Fail to Plausible Allege a RFRA Violation

Next, Plaintiffs allege that their inclusion on the government watchlists violates the RFRA because it "limits their freedom of movement and prevents them from engaging in one of the most basic tenets of their religion." Pls.' Opp'n, ECF No. 45 at 31.

Enacted in 1993, the RFRA was intended "to provide greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694-95 (2014)).

The RFRA provides:

> "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, [unless] . . . it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C. § 2000bb-1(a)-(b). "A substantial burden exists when government action puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 679 (D.C. Cir. 2008) (quoting *Thomas v.*

*Review Bd.,* 450 U.S. 707, 718, 101 S. Ct. 1425, 67 L.Ed.2d 624 (1981)).

The Court has discussed in detail above why Plaintiffs have failed to allege facts supporting the claim that their freedom of movement is burdened, much less substantially burdened, by their placement within the TSDS. Since they have failed to do so, they have failed to plausibly allege a violation of the RFRA. *See id.* at 679 (a plaintiff must allege facts sufficient to state a substantial burden on religious exercise).

### E. Plaintiffs' EAJA Claim Is Premature

Finally, Plaintiffs' EAJA claim is premature because there has been no final judgment in this action. *See Melkonyan v. Sullivan*, 501 U.S. 89, 94 (1991). Accordingly, this claim will be dismissed.

### IV.  Conclusion

For the reasons explained above, the Court **GRANTS** Defendants' Motion to Dismiss, ECF No. 43; and **DISMISSES** this case **WITHOUT PREJUDICE.**

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **April 1, 2026**

32